TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery Section
THI HOANG HO (Cal. Bar No. 293978)
Assistant United States Attorney
Asset Forfeiture & Recovery Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-0596
Facsimile: (213) 894-0141
E-mail: Thi.Ho@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>APPROXIMATELY 1,288,711.813094 USDT0 CRYPTOCURRENCY,<br><br>Defendant. | No. 2:26-cv-13570<br><br><u>VERIFIED COMPLAINT FOR FORFEITURE</u><br><br>18 U.S.C. § 981(a)(1)(A) and (C) |

Plaintiff United States of America brings this claim against the defendant identified herein (the "Defendant Asset"), and alleges as follows:

## JURISDICTION AND VENUE

1. Plaintiff United States of America brings this in rem forfeiture action pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).

2. This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this District pursuant to 28 U.S.C. §§ 1355 and 1395.

## PERSONS AND ENTITIES

4. The plaintiff is the United States of America (the "plaintiff" or the "government").

5. The Defendant Asset is approximately 1,288,711.813094 USDT0, which is a "stablecoin" type of virtual currency whose value is pegged to the U.S. dollar as discussed below. More specifically, the Defendant Asset consists of the USDT0 transferred to the government following the issuance of a federal seizure warrant on September 23, 2026, associated with the virtual currency address 0xaa2fda50ca3731970d363d750AdF676F6783490c (the "Virtual Currency Address") and directing that EverDawn Labs Limited deliver the USDT0 to the government.

6. The Defendant Asset was seized pursuant to a federal seizure warrant on or about October 12, 2026 by the Federal Bureau of Investigation ("FBI"), where the Defendant Asset shall remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of a U.S. victim company and EverDawn Labs Limited may be adversely affected by these proceedings.

## BASIS FOR FORFEITURE

8. On December 25, 2023, one or more cybercriminal actors (the "Subjects") carried out a cyber-attack on a U.S. victim company, gaining access to the virtual currency wallets of the company's users and then transferring the equivalent of millions of dollars in cryptocurrency from the users' virtual currency wallets. The U.S. victim company is a multi-national financial technology company, with an office in Los Angeles, California, that integrates blockchain technology, telecommunications, and digital banking on mobile money platforms for mobile phone users worldwide.

9. Before discussing the factual details concerning the scheme, a brief discussion of relevant virtual currency terms is in order.

## I. Definitions and Background Related to Virtual Currency.

10. Virtual Currency (or cryptocurrency) is a digital asset designed to work as a medium of exchange that uses cryptography to secure financial transactions, control the creation of additional units of the currency, and verify and transfer assets. Bitcoin (BTC) and Ether (ETH) are two popular types of virtual currency, but there are multiple other types of virtual currency. Cryptocurrency can exist digitally on the Internet, in an electronic storage device, or in cloud-based servers. Although not usually stored in any physical form, public and private keys used to transfer cryptocurrency from one person or place to another person or place can be printed or written on a piece of paper or other tangible object. Cryptocurrency can be exchanged directly person to person, through a cryptocurrency exchange, or through other intermediaries. Generally, cryptocurrency is not issued by any government, bank, or company; it is instead generated and controlled through computer software operating on a decentralized peer-to-peer network.

11. Cryptocurrencies operate on a "blockchain," which is a distributed public ledger, run by the decentralized network, containing an immutable and historical record of every transaction. Blockchains are constantly updated and maintain a record of every transaction and the known balance for each virtual currency address associated with that blockchain. There are different blockchains for different types of virtual currencies, and some virtual currencies have been implemented on multiple blockchains.

12. Cryptocurrency is stored in a virtual account called a wallet. Wallets are software programs that interface with blockchains and generate and/or store public and private keys used to send and receive cryptocurrency. A public key or address is akin to a bank account number, and a private key is akin to a PIN number or password that allows a user the ability to access and transfer value associated with the public address or key. To conduct transactions on a blockchain, an individual must use the public address (or "public key") and the private address (or "private key"). A public address is represented as a case-sensitive string of letters and numbers, 26–35 characters long. Each public address is controlled and accessed through the use of a unique

corresponding private key — the cryptographic equivalent of a password or PIN — needed to access the address. Only the holder of an address's private key can authorize any transfers of cryptocurrency from that address to another cryptocurrency address.

13. Stablecoins are a type of virtual currency whose value is pegged to a commodity's price, such as gold, or to a fiat currency, such as the U.S. dollar, or to a different virtual currency. Stablecoins achieve their price stability via collateralization (backing) or through algorithmic mechanisms of buying and selling the reference asset or its derivatives.

14. A smart contract is a self-executing agreement stored on a blockchain network that automatically carries out predefined actions. When certain conditions are met, the contract automatically executes, often triggering the transfer of digital assets or other actions. Smart contracts are typically written in programming languages and deployed to blockchain platforms like Polygon. Once deployed, the code and resulting transactions are recorded on a distributed ledger, making them generally immutable and publicly verifiable.

15. Tether International S.A. de C.V. ("Tether") is the company that manages the smart contracts and the treasury (i.e., the funds held in reserve) for USDT tokens. USDT is a virtual currency issued by Tether that is designed to maintain a stable value by being pegged to the U.S. dollar. It is an example of a stablecoin. USDT exists independently on various blockchains.

16. USDT0 is an "omnichain" version of USDT designed for seamless movement between different blockchain networks. It is also a stablecoin. USDT0 was first launched in January 2025 and has since expanded to major virtual currency and digital asset networks including Polygon, Arbitrum, Optimism, and Solana. USDT0 is managed by Everdawn Labs Limited. While Tether remains the issuer of USDT, Everdawn Labs Limited serves as the operational layer for USDT0 deployments across multiple blockchains.

17. MATIC was the native cryptocurrency of the Polygon blockchain network

until September 4, 2024, when it was replaced by POL. Both MATIC and POL have been used to pay fees associated with conducting transactions on the Polygon blockchain network. A native cryptocurrency is a digital asset associated with a particular blockchain and used in its operation. For example, Ether (ETH) is the native cryptocurrency of the Ethereum blockchain, while POL is the native cryptocurrency of the Polygon PoS blockchain. Native cryptocurrencies commonly serve to pay transaction fees and help secure their respective blockchain networks.

## II. The Subjects Accessed the Virtual Wallets of the U.S. Victim Company's Users Without Their Authorization.

18. On December 25, 2023, the Subjects exploited a vulnerability in the U.S. victim company's smart contract on the Polygon blockchain. Specifically, the Subjects exploited the initialize() function[1] in the U.S. victim company's user wallets that had not yet initiated a transaction, in order to gain access to those wallets. A flaw in the U.S. victim company's smart contract implementation allowed the initialize() function, which was intended to be called only once during a wallet's initial setup, to be called a second time by an unauthorized party if the wallet had not yet initiated a transaction. By exploiting this vulnerability, the Subjects were able to replace the legitimate software functionality of the affected wallet contracts with malicious code, effectively gaining control over the victim wallets and the cryptocurrency they held.

19. By calling[2] the initialize() function, the Subjects fraudulently gained access to the targeted wallets, which are access devices, thereby allowing the Subjects to gain practical control over the virtual currencies inside the affected wallets, including the ability to transfer funds out of the wallets, without the knowledge or consent of either the U.S. victim company or the wallets' actual owners. The Subjects were thus able to transfer approximately $12 million U.S. dollars ("USD") in cryptocurrency held within

---

[1] A function is a named block of code that performs a specific task, optionally accepts inputs, and then may return a result.

[2] In computer programming, calling a function (or invoking a function) means telling the computer to execute a specific, pre-written block of code.

thousands of the U.S. victim company's user wallets, to wallets controlled by the Subjects.

20. The stolen cryptocurrency was thereafter transferred to other wallets or cryptocurrency exchanges, including the Virtual Currency Address.

## III. The Defendant Asset Is the Traceable Proceeds of the Unauthorized Access Device Fraud and Wire Fraud.

21. Based on blockchain tracing analysis, between approximately December 25 and 26, 2023, the Subjects transferred 990 million stolen cryptocurrency tokens belonging to the U.S. victim company, valued at approximately $12 Million USD, from the U.S. victim company's users' wallets to the virtual currency wallet with address 0x092d6b3e7db61c477cec730926176a9869bb776b (the "0x092d Address"). Shortly after the original transfer, the 0x092d Address converted the stolen cryptocurrency it received from the U.S. victim company's users' wallets into USDT and MATIC. More specifically, between December 26, 2023 and January 8, 2024, in hundreds of transactions, the Subjects converted the stolen cryptocurrency to USDT on the Polygon blockchain.

22. On August 27, 2025, Polygon automatically upgraded and converted all USDT on its blockchain to USDT0. Accordingly, at that time, all of the cryptocurrency that had been stolen from the U.S. victim company's user accounts and initially converted to USDT was upgraded to USDT0.

23. Then, on December 26, 2023, in one transaction, the 0x092d Address transferred 896,247.254627 USDT0 to the Virtual Currency Address.

24. In another transaction on January 8, 2024, the 0x092d Address transferred 392,464.558467 USDT0 to the Virtual Currency Address.

25. In total, approximately 1,288,711.813094 USDT0 was transferred to the Virtual Currency Address. No other USDT0 transactions were recorded for the Virtual Currency Address up to the date of seizure by the FBI, thus indicating that all the USDT0 that was transferred to the Virtual Currency Address was from the December

2023 cyber hack of the U.S. victim company and theft from its users' wallets.

**FIRST CLAIM FOR RELIEF**

26. Based on the facts set forth above, the government alleges that the Defendant Asset constitutes property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and/or 1956(a)(1)(B)(i), or property traceable to such property, with the specified unlawful activity being a violation of 18 U.S.C. § 1029(a)(2) (access device fraud) and/or 18 U.S.C. § 1343 (wire fraud). The Defendant Asset is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

**SECOND CLAIM FOR RELIEF**

27. Based on the facts set forth above, the government alleges that the Defendant Asset constitutes or is derived from proceeds traceable to, or a conspiracy to commit violations of 18 U.S.C. § 1029(a)(2) (access device fraud) and/or 18 U.S.C. § 1343 (wire fraud), each of which is a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B). The Defendant Asset is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the Defendant Asset;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c) that this Court decree forfeiture of the Defendant Asset to the United States of America for disposition according to law; and

/ /

/ /

/ /

(d) for such other and further relief as this Court may deem just and proper together with the costs and disbursements of this action.

Dated: November 23, 2026

TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
JONATHAN S. GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section

/s/
THI HOANG HO
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

# VERIFICATION

I, Jeremy Durk, hereby declare as follows:

1. I am a special agent of the Federal Bureau of Investigation and am familiar with this investigation.

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my personal knowledge and reports provided to me by other law enforcement agents, which I believe to be reliable.

3. Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 19, 2026 in Los Angeles, California.

Jeremy Durk
Special Agent
Federal Bureau of Investigation